**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


SALLY HARSHAW RAMSEY,              )
                                   )
              Plaintiff,           )
                                   )
       v.                          )       1:10CV618
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social      )
Security,[1]                       )
                                   )
              Defendant.           )


**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

     Plaintiff, Sally Harshaw Ramsey, brought this action pursuant

to Section 205(g) of the Social Security Act, as amended (42 U.S.C.

§ 405(g)), to obtain judicial review of a final decision of

Defendant, the Commissioner of Social Security, denying Plaintiff's

claim for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social

Security Act (the "Act"). (See Docket Entry 1.) The Court has

before it the certified administrative record (cited herein as "Tr.

__") and the parties have filed cross-motions for judgment (Docket

Entries 7, 11). For the reasons that follow, the Court should

enter judgment for Defendant.

---

     [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013, resulting in her substitution as Defendant pursuant to Federal
Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

Plaintiff first applied for DIB and SSI on May 1, 2006, alleging a disability onset date of April 1, 2005. (Tr. 156-66.) Following denial of those applications at the initial level because Plaintiff's gainful employment after her onset date disqualified her for benefits (Tr. 199-200), Plaintiff filed second applications for DIB and SSI, again alleging a disability onset of April 1, 2005 (Tr. 167-80). Upon denial of those applications both initially (Tr. 83-84, 89-100) and on reconsideration (Tr. 85-86, 105-22), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 123-24). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-78.) The ALJ then ruled Plaintiff not disabled under the Act. (Tr. 12-26.) The Appeals Council thereafter denied Plaintiff's request for review, thus making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-5.)

In ruling Plaintiff ineligible for disability benefits, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2011.
>
> 2. [Plaintiff] engaged in substantial gainful activity since April 1, 2005, the alleged onset date . . . [but not after she] was involved in a motor vehicle accident on May 15, 2006. . . .
>
> 3. [Plaintiff] has the following severe impairments: post traumatic stress disorder; bipolar disorder;

2

congestive heart failure; hypertension; obesity and asthma (20 CFR 404.1520(c) and 416.920(c)).

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

. . .

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), lifting, carrying, pushing and pulling[] no more than 10 pounds at a time. [Plaintiff] can sit 6 hours in an 8 hour workday, and stand and walk 2 hours in an 8 hour workday. She could kneel, or crawl and stoop or crouch but not climb or balance. She has no significant visual, manipulative or communication limitations. An environmental limitation would be avoidance of respiratory irritants. Due to her depression and anxiety she is limited to understanding and carrying out simple, routine, repetitive tasks with occasional contact with co-workers and no contact with the public and no work requiring operation of a motor vehicle.

(Tr. 17-22.)[2]

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could not perform her past relevant work as a community support provider, data entry clerk, cashier, and kitchen helper. (Tr. 24.) However, based on the VE's testimony, and after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded "there are

---

[2] Because Plaintiff "did not formally amend her onset date, the [ALJ] consider[ed] [Plaintiff's] record since the alleged onset date." (Tr. 17.)

3

jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id.) Accordingly, the ALJ ruled that Plaintiff had no "disability," as defined in the Act, at any time from her onset date through the date of decision. (Tr. 26.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If

4

there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court also must note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example,

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

"[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. <u>Id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age,

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<em>e.g.</em>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

education, and past work experience) to adjust to a new job."
<u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

## Assignments of Error

The ALJ determined at step one that Plaintiff performed no substantial gainful activity after May 15, 2006. (Tr. 17.) At step two, the ALJ decided that Plaintiff suffered from six severe impairments. (Tr. 17-20.) The ALJ then concluded at step three that none of Plaintiff's impairments met or equaled a listing, but ruled at step four that her impairments limited her to sedentary work with further restrictions that precluded a return to her past relevant work. (Tr. 20-24.) However, at step five, the ALJ found, based on the VE's testimony, that Plaintiff could do other available jobs and thus did not qualify as disabled. (Tr. 24-26.)

Plaintiff argues that substantial evidence does not support the ALJ's findings at steps two through five and/or that the ALJ incorrectly applied the law at these steps. (Docket Entry 8 at 12-

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

20.)  Specifically, Plaintiff asserts that the ALJ erred by:  (1) misconstruing the opinion of a treating psychiatrist (id. at 12-13, 14-17);[7] (2) failing to find that Plaintiff's bipolar disorder met or equaled a listing (id. at 13-14); (3) neglecting to identify additional severe impairments (id. at 17-18); and (4) ignoring a state agency consultant's opinion (id. at 18-19).  Defendant contends otherwise and urges that substantial evidence supports the finding of no disability.  (Docket Entry 12 at 6-14.)

## 1.    Treating Psychiatrist's Opinion(s)

Plaintiff claims the ALJ erroneously assessed the opinion of treating psychiatrist, Dr. Robert A. Millet, in that: (1) "[t]he ALJ appeared to rely upon notes of Dr. Millet in concluding that [Plaintiff's] bipolar disorder had improved . . . [when,] [i]n fact, Dr. Millet's statements reflect nothing of the sort" (Docket Entry 8 at 12); and (2) "[t]he ALJ also put words into the record when he state[d] that Dr. Millet 'felt [Plaintiff] had problems with concentration, persistence and pace, but not to the extent that she could not perform simple, repetitive, routine tasks'" (id. at 14).  These contentions lack merit.

As to the first of these matters, Plaintiff focuses on one particular paragraph from the portion of the ALJ's decision that ruled in Plaintiff's favor by finding that the bipolar disorder

_____

[7] Because Plaintiff's first and third assignments of error both focus on Dr. Robert A. Millet's opinion(s), this Recommendation analyzes them together.

(for which Dr. Millet treated her) constituted a severe impairment. (Id. at 12 (citing Tr. 18, ¶ 4).)  Given that the paragraph in question formed part of the section of the ALJ's decision in which the ALJ ruled in Plaintiff's favor, she should have explained how any alleged misstatement by the ALJ resulted in any prejudice, see, e.g., Camp v. Massanari, 22 F. App'x 311, 311 (4th Cir. 2001) (applying harmless error standard in Social Security benefits review context and refusing to remand absent showing of prejudice), but did not (see id. at 12-13).  That failure warrants denial of relief.  See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his Brief, the court will not address them.").

Moreover, in the paragraph of the ALJ's decision cited by Plaintiff, the ALJ did not "conclud[e] that Plaintiff's bipolar disorder had improved" (Docket Entry 8 at 12); rather, the ALJ merely accurately recited statements made by Dr. Millet (see Tr. 18).  In particular, consistent with Dr. Millet's notes, the ALJ

reported that, by December 15, 2006, Plaintiff's bipolar symptoms had shown "dramatic improvement" (<u>compare</u> Tr. 18, <u>with</u> Tr. 355) and that, in February 2007, again according to Dr. Millet's notes, Plaintiff's bipolar disorder was "much improved" (<u>compare</u> Tr. 18, <u>with</u> Tr. 536). The ALJ did not reversibly err by accurately setting out Dr. Millet's exact words, particularly not where the ALJ did so while agreeing with Plaintiff that her bipolar disorder qualified as a severe impairment.[8]

Plaintiff also contends the ALJ incorrectly interpreted Dr. Millet's medical source statements as opining that Plaintiff could do simple, repetitive, routine tasks ("SRRTs") and that, as a result, the ALJ adopted an errant RFC. (Docket Entry 8 at 14-17.) Plaintiff bases this contention on the ALJ's statement that, in October 2009, Dr. Millet indicated Plaintiff "'had problems with concentration, persistence and pace, but not to the extent that she could not perform [SSRTs].'" (<u>Id.</u> at 14 (quoting Tr. 23).) According to Plaintiff, Dr. Millet's contemporaneous finding of marked impairment in Plaintiff's ability to complete a normal workday/week "alone implies" that Dr. Millet believed Plaintiff lacked the capacity for SRRTs. (<u>Id.</u> at 14-15 (citing Tr. 914).)

---

[8] Nor did the ALJ omit the other material aspects of Plaintiff's mental health history identified in this section of her brief. (<u>Compare</u> Docket Entry 8 at 12-13 (pointing out that (in February 2007) Plaintiff experienced hospitalization for hallucinating bad smells, that (in April 2007) Plaintiff complained about weight gain from medication, and that (in 2009) Dr. Millet reported problems experienced by Plaintiff), <u>with</u> Tr. 19-20 (noting same).)

In fact, viewed in totality, Dr. Millet's findings support the ALJ's determination that Plaintiff could carry out SRRTs. (See Tr. 356-59, 913-14.) In December 2006, Dr. Millet stated that Plaintiff had no significant impairment in her "ability to understand and remember short and simple instructions," "to carry out very short and simple instructions," and "to make simple work-related decisions." (Tr. 357, 359.) At the same time, Dr. Millet found only moderate impairment of Plaintiff's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "to sustain an ordinary routine without special supervision," as well as "to respond appropriately to changes in the work setting." (Tr. 357, 359.) Similarly, in October 2009, Dr. Millet assessed no significant impairment of Plaintiff's "ability to understand and remember short and simple instructions" and "to carry out very short and simple instructions," as well as only moderate impairment of her "ability to maintain attention and concentration for extended periods," "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "to sustain an ordinary routine without special supervision," "to work in coordination and proximity with others without being distracted," "to make simple work-related decisions," and "to respond appropriately to changes in the work setting." (Tr. 914.)

The foregoing findings mirror Dr. Millet's treatment notes which consistently reflect unremarkable mental examinations and stable or improved symptoms when Plaintiff complied with medications. (Tr. 355, 533-43, 656, 769, 858-59, 908-12.) Dr. Millet's statements and underlying records thus provide substantial evidence to support the ALJ's determination that Plaintiff remained capable of SRRTs. See, e.g., Adams v. Astrue, No. CV07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) (unpublished) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace . . . [of] no more than moderate." (citing cases from three circuits)).[9]

---

[9] To the extent conflicts about Plaintiff's capacity for SRRTs existed in the reports and records of Dr. Millet, "the ALJ performed his duty to weigh the evidence, resolve conflicts in the evidence, make findings, and arrive at a conclusion," Lewis v. Astrue, No. 5:09CV412-FL, 2009 WL 2579644, at *4 (E.D.N.C. Aug. 17, 2009) (unpublished). In so doing, the ALJ had no obligation to lend controlling weight to any opinions of Dr. Millet that Plaintiff could not work. See Policy Interpretation Ruling Titles II and XIV: Medical Source Opinions on Issues Reserved to the Commissioner ("SSR 96-5p"), 1996 WL 374183, at *5 (July 2, 1996) ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work' . . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner . . . [and] can never be entitled to controlling weight or given special significance."). Moreover, the fact that the state agency consultants both concluded that Plaintiff retained the ability to do SRRTs (Tr. 626-43, 742-59) bolsters the view that the ALJ acted within a proper zone of choice by reaching the same conclusion. See, e.g., Penick v. Astrue, No. 3:08CV549, 2009 WL 3055446, at *9 (E.D. Va. Sept. 23, 2009) (unpublished) ("An ALJ is allowed to rely on an RFC assessment by someone such as Dr. Chaplin, based on his qualifications as a highly qualified state agency consultant, and as an expert in Social Security disability evaluation."). Finally, Plaintiff cited no authority showing that portions of Dr. Millet's medical source statements regarding Plaintiff's problems interacting with others (referenced in this portion of her brief) would support (much less mandate) a finding that she lacked the ability to perform SRRTs. (See Docket Entry 8 at 15-17.) That failure looms particularly large, given that the ALJ expressly addressed such interaction deficits by including within Plaintiff's RFC restrictions against more than occasional contact with co-workers and any contact with the public. (Tr. 22.)

## 2. Bipolar Listing(s)

Plaintiff also contends that the ALJ erred at step three by finding that Plaintiff's "'impairments d[id] not result in bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes and currently characterized by either or both syndromes.'" (Docket Entry 8 at 13 (quoting Tr. 20-21).) According to Plaintiff, the ALJ's finding at step two that Plaintiff's bipolar disorder constituted a severe impairment, as well as the bipolar disorder diagnoses of Dr. Millet and primary care physician Dr. Arthur Axelbank, contradict the ALJ's step three ruling. Plaintiff's contentions in this assignment of error fall short.

The ALJ's above-quoted finding comes from the step three analysis of whether Plaintiff's impairments met or equaled a listed impairment. (Tr. 20-21.) More specifically, the ALJ analyzed whether Plaintiff's mental impairments met or equaled Listing 12.04, 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.04, or Listing 12.06, 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.06. (<u>Id.</u>) After carefully evaluating the evidence and comparing it to the relevant listing criteria, the ALJ concluded that Plaintiff's mental impairments did not meet or equal either listing. (<u>Id.</u>) The record reveals no error in that regard.

The mere fact that Plaintiff's doctors diagnosed her with bipolar disorder does not establish that her bipolar disorder met the specific criteria of a listing. See, e.g., Turner ex rel. BDT v. Commissioner of Soc. Sec., No. 6:10CV1497-Orl-GJK, 2012 WL 1004841, at *15 n. 16 (M.D.Fla. Mar. 26, 2012) (unpublished). Similarly, a step two severity determination requires only a "de minimis" showing, see, e.g., Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011), different from the more "demanding" task of establishing that a disorder meets or equals a listing, see, e.g., Thompson v. Astrue, No. 6:10CV1203, 2011 WL 6181450, at *4-5 (W.D. La. Nov. 18, 2011) (unpublished). Moreover, Plaintiff has made no effort to show that, in the course of diagnosing or treating Plaintiff, Drs. Millet and/or Axelbank proffered any opinions that would tend to establish that Plaintiff's bipolar disorder met or equaled any disability listing. (See Docket Entry 8 at 13-14.)[10] As a result, the Court should deny relief. See, e.g., Belk, 679 F.3d at 152 n.4; Zannino, 895 F.2d at 17; Nickelson, 2009 WL 2243626, at *2 n.1.

## 3. Severe Impairments

The ALJ identified six severe impairments at step two: post traumatic stress disorder ("PTSD"), bipolar disorder, congestive

---

[10] Both state agency consultants found that Plaintiff's mental impairments, although severe (for step two purposes), failed to meet or equal any of the listed impairments (for step three purposes). (Tr. 626-39, 742-55.)

heart failure, hypertension, obesity, and asthma. (Tr. 17-20.)
Plaintiff contends the ALJ should have categorized her major
depressive disorder, migraines, gastroesophageal reflux disorder
("GERD"), and personality disorder as additional severe impairments
and should have addressed them in the RFC formulation. (Docket
Entry 8 at 17-18.) The Court should find no reversible error.

An impairment qualifies as "not severe" if it constitutes only
"a slight abnormality . . . that has no more than a minimal effect
on the ability to do basic work activities." Policy Interpretation
Ruling Titles II and XVI: Considering Allegations of Pain and Other
Symptoms in Determining Whether a Medically Determinable Impairment
is Severe ("SSR 96-3p"), 1996 WL 374181, at *1 (July 2, 1996).
Applicable regulations define "basic work activities" to include:

> (1) Physical functions such as walking, standing,
> sitting, lifting, pushing, pulling, reaching, carrying,
> or handling;

> (2) Capacities for seeing, hearing, and speaking;

> (3) Understanding, carrying out, and remembering
> simple instructions;

> (4) Use of judgment;

> (5) Responding appropriately to supervision, co-
> workers and usual work situations; and

> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

Courts generally consider an impairment in any one of the above-quoted areas severe unless it qualifies as obviously slight, insignificant, or meaningless.  See Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir. 1984).  A plaintiff, however, must support any showing of severity with relevant medical evidence:

> A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

> The determination at step two is based on medical factors alone.  Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a).  A claimant's statements regarding the severity of an impairment is [sic] not sufficient.  Adame v. Apfel, 2000 WL 422341 at *3-4 (D. Kan. March 20, 2000); Flint v. Sullivan, 743 F. Supp. 777, 782 (D. Kan. 1990).

<u>Rivas v. Barnhart</u>, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan. Aug. 16, 2006) (unpublished).

Plaintiff did not meet that burden. With regard to migraines and GERD, no medical evidence establishes that these impairments had more than a minimal impact on Plaintiff's ability to perform basic work activities. The record reflects only sporadic treatment for migraines (e.g., in June 2006, November 2006, May 2007, and April 2008) and her symptoms resolved with injections of pain and anti-nausea medication. (Tr. 276, 551, 561-66, 573-77, 804-05.) As to GERD, the record shows, at most, a complaint of related symptoms on June 26, 2006, and a change in her prescription from ranitidine to Prevacid. (Tr. 575.) Plaintiff did not even mention GERD as an impairment on her Disability Report (Tr. 204) or at her hearing (Tr. 38-67). Moreover, an upper gastrointestinal endoscopy in June 2008 revealed a normal esophagus, stomach, and duodenum. (Tr. 866-67.) Substantial evidence thus supports the ALJ's omission of migraines and GERD from the list of severe impairments.

The same conclusion applies with respect to major depressive disorder and personality disorder. Dr. Millet, Plaintiff's treating psychiatrist, did not diagnose her with either of those disorders. (Tr. 355-59, 533-543, 656, 769, 858-59, 908-914.) Instead, Dr. Millet consistently diagnosed Plaintiff with bipolar disorder and PTSD (<u>id.</u>), both of which the ALJ identified as severe

18

impairments (Tr. 17). Under these circumstances, substantial evidence supports the ALJ's decision not to identify major depressive disorder or personality disorder as severe impairments.

Even if the ALJ erred by failing to classify migraines, GERD, major depressive disorder, and personality disorder as severe impairments, that error would not warrant a remand. Where an ALJ concludes that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). In this case, the ALJ found six severe impairments at step two and (as discussed both above and below) properly proceeded with the remaining steps of the SEP. (Tr. 17-26.) Any alleged misapplication of law at step two thus caused no prejudice. See Oldham, 509 F.3d at 1256-57; Lewis, 498 F.3d at 911; Maziarz,

837 F.2d at 244; Lauver, 2010 WL 1404767, at *4; Washington, 698 F. Supp. 2d at 579-80; Jones, 2009 WL 455414, at *2.

With regard to the RFC formulation, Plaintiff has not disclosed any additional limitations the ALJ allegedly should have included due to migraines, GERD, major depressive disorder, or personality disorder. (Docket Entry 8 at 17-18.) Plaintiff's failure to develop this argument warrants denial of relief. See, e.g., Belk, 679 F.3d at 152 n.4; Zannino, 895 F.2d at 17; Nickelson, 2009 WL 2243626, at *2 n.1. Moreover, the RFC sufficiently accounted for symptoms Plaintiff could have attributed to major depressive disorder and personality disorder by restricting her to SRRTs, only occasional contact with co-workers, no contact with the public, and no work requiring driving. (Tr. 21.) Under these circumstances, Plaintiff has shown no basis for reversal or remand in connection with this assignment of error.

## 4. State Agency Consultants

Finally, Plaintiff maintains that the ALJ "endorsed the Agency psychologist who agreed with the ALJ's assessment . . . but totally ignored the other Agency psychologist who came to a different conclusion." (Docket Entry 8 at 19.) More specifically, Plaintiff asserts that the ALJ "never acknowledged the existence" of the opinion of Larry H. Dennis, Ph.D., that Plaintiff would "'need a flexible daily schedule and all customary rest periods in roomy

work places with a few familiar coworkers' . . . [as well as that Plaintiff's] contact with the public should be 'casual and criticism non-confronting,' and 'changes in work settings should be infrequent and gradually introduced.'" (Id. (quoting Tr. 642).) According to Plaintiff, that alleged failure by the ALJ warrants reversal or remand. (See id.) This argument lacks merit.

At the outset, although the ALJ's decision does not expressly reference Dr. Dennis's report, that fact does not mean the ALJ ignored it; an ALJ need not discuss every piece of evidence in the record. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). The ALJ's decision does reflect the giving of "[g]reat weight" to state agency consultant Clifford H. Charles, Ph.D.'s opinion that Plaintiff "could perform [SRRTs] . . . [because] th[at] opinion was consistent with the level of treatment documented in the record and consistent with the observations of the treating psychiatrist [Dr. Millet]." (Tr. 24.)[11] Dr. Dennis's opinion, however, does not conflict with Dr. Charles's opinion on that point, but rather also concludes Plaintiff could do SRRTs. (See Tr. 642 (stating that Plaintiff "can understand, remember, and carry out simple tasks[,]

_____

[11] As discussed in a prior subsection, substantial evidence supports this construction of Dr. Millet's reports and records.

. . . follow simple directions[,] . . . [and] maintain attention to a simple task for two hours without special supervision").)[12]

Furthermore, at step five, the ALJ called upon a VE to testify as to the availability of jobs that conformed to the ALJ's RFC determination. (Tr. 72-74.) The ALJ included in his hypothetical question to the VE several restrictions consistent with (or even greater than) Dr. Dennis's opinion: sedentary work, SRRTs, only occasional contact with co-workers, and no contact with the public. (Tr. 72.) In response, the VE identified three different jobs (each available in significant numbers) that accommodated those restrictions. (Tr. 73.) On cross-examination, Plaintiff's counsel questioned the VE about Dr. Dennis's requirement of "a flexible daily schedule, and all customary rest periods, and [a] roomy workplace, with a few familiar coworkers." (Tr. 75.) The VE testified that at least one of the three identified positions also accommodated that restriction. (Tr. 76.) No grounds thus exist to reverse or remand, because Plaintiff can show no prejudice. See Camp, 22 F. App'x at 311.

---

[12] Sedentary jobs customarily have "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work ("SSR 96-9p"), 1996 WL 374185, at *6 (July 2, 1996). Accordingly, the ALJ's adoption of an RFC for only sedentary work accommodated the two-hour attention limit endorsed by Dr. Dennis.

**CONCLUSION**

Plaintiff's assignments of error all lack merit. First, the ALJ did not misconstrue Dr. Millet's opinion(s), either in connection with the step two severity analysis or the formulation of the RFC. Second, the fact that Plaintiff received a diagnosis of bipolar disorder and that said impairment met the step two severity requirement does not establish that the ALJ erred by concluding that it failed to meet or to equal a listing. Third, Plaintiff has shown no reversible error by the ALJ in the identification of severe impairments at step two and/or in the consideration of all impairments for purposes of setting the RFC. Finally, the record reflects no basis for reversal or remand regarding Dr. Dennis's opinion(s).

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 7) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

　　　　　　　　　　　　　　　　　　/s/ L. Patrick Auld
　　　　　　　　　　　　　　　　　　**L. Patrick Auld**
　　　　　　　　　　　　**United States Magistrate Judge**

February 18, 2014